Spear, J.
The matter in the settlement account to which the exception was directed was a credit in the sum of $1,360 of the funds of the estate invested by the administrator in forty shares of the capital stock of the Canton state bank, a corporation organized under the banking laws of Ohio on May 10, 1900, and engaged in a general banking business at the city of Canton, Ohio. The claim of the exceptor is that the investment of the estate’s funds was without authority of law, and that of the administrator that the authority to so invest is given in the will of the deceased.
Twenty shares of this stock were purchased April 8, 1904, and twenty shares October 7, 1904. The bank failed May 24, 1905, and the stock then became and has remained entirely worthless. The par value of the stock was fifty dollars per share of which sixty per cent, had been paid in. The purchase was at thirty-four dollars per share, and stock of the bank was selling at the time of the purchase in the market at Canton at thirty-four and thirty-five dollars per share. Dividends had been and were then being paid on the stock. The purchases were made without consultation with any of the beneficiaries of the estate, or any one acting in their interest, without their knowledge or consent, and without any order of court, although the administrator did mention to the judge of the probate court that he thought of purchasing' some of the stock for the estate and the judge *295 responded that it ought to be a good investment, and he had some of the stock himself. Prior to the purchase- the administrator made inquiries of a number of reputable business men of good judgment on the question of investments, and they advised that the stock was both safe and an excellent investment, and reputable citizens of good judgment at the dates of purchase above stated purchased shares of the stock at the figures stated as late as April 21, 1905. The administrator, also, before the purchase advised with a lawyer of the Canton bar of high standing (one who had means of knowing the character and market value of the bank’s stock and well qualified to give a legal opinion in the matter), with reference to the investment, asking him particularly about the terms of the will as to whether they would cover such an investment, and he advised that the terms were sufficiently broad to cover that investment. The administrator also himself examined the statements of the bank sworn to by the cashier on April 4, 1904, and statement of a date previous thereto, which statements* showed the bank as having a surplus and undisposed of profits amounting to between twenty-five and thirty thousand dollars and the bank in good financial condition. At the time of the purchase the administrator was a stockholder in his own right of sixty shares of the stock, and remains such owner. It seems unnecessary to go farther into the circumstances because the record shows an admission by counsel for the, guardian that in the purchase the administrator acted with good faith and with prudence, diligence and good judgment aside from the claim *296 that he exceeded his legal authority in making that kind of an investment.
Whether or not the administrator did exceed his legal authority depends upon á proper construction of the will in connection with the statute on the subject. The portion of that instrument called in question is as follows:
“I do hereby nominate and appoint my wife, Mary E. Allen, executrix of this, my last will and testament, hereby authorizing and empowering her to compromise, adjust, release and discharge in such manner as she may deem proper, the debts and claims due to and from me. I do devise and bequeath to my said executrix and trustee and to her successors in trust, the title to all the property hereinbefore described. I do also authorize and empower my said executrix and trustee and her successors in trust, whenever in her or their judgment the interests of my estate shall demand, to sell at private sale or otherwise, all or any part of my personal estate in such manner and upon such terms as may be deemed best and deliver for any or all real estate sold, deeds acknowledged by her or them, and reinvest the proceeds arising from any 'such sales in such manner as she or they may think best, to dispose of any property, real or personal, so acquired and reinvest the proceeds in the same manner.”
The particular provision which' is the subject of special dispute is the last clause, viz.: “and reinvest the proceeds arising from any such sales in such manner as she or they may think best, .to dispose of any property real or personal so ac■quired and reinvest the proceeds in the same manner.”
*297 It is contended in support of the judgment of the=acircuit court that the administrator had no legal authority to invest the fund in bank stock because it is the duty of the trustee to invest in accordance with the provisions of the statute where the instrument creating the trust does not otherwise specify or direct, that this will does not otherwise specify or direct, and therefore the administrator was bound to follow the statute which does not permit, but in effect forbids, the investment of trust funds as in the present case in bank stock; that good faith, diligence and advice of counsel give no protection to the trustee, and where he makes an unauthorized investment he becomes personally liable.
The claim of opposite counsel in attacking the judgment below is that the provisions of the will above quoted extend the scope of the statute governing investments by trustees and take the case out of the operation of the statute, and that the provision of the will, not being contrary to any positive rule of law, must prevail; that the intent of the testator as to authority of his trustee to make investments clearly expressed in the will is to clothe the trustee with powers practically unlimited. Having acted, therefore, in admitted good faith and with diligence and discretion, the administrator cannot be held personally liable for the misfortune which attended the investment.
Section 6413 of the Revised Statutes is the section directing how executors, et cetera, may invest trust funds, which section is as follows:
“Executors, administrators, guardians and trustees may, when they have funds belonging to the *298 trust which are to be invested, invest the same in the certificates of-the indebtedness of this state or of the United States, or in such other securities as may be approved by the court having control of the administration of the trust, and whenever money coming into the hands of an executor, administrator, trustee, agent, assignee, attorney, or officer shall be stopped therein by reason of litigation or other lawful cause, and the same will probably be so detained for more than six months, such executor, administrator, trustee, agent, assignee, attorney or officer may invest the same during such detention in the same manner that trust funds are now authorized by law to be invested, or in such other manner as the probate court or other court having jurisdiction of the pending litigation, or person aforesaid, may direct.”
It is perhaps enough to say of this statute that it is permissive. It provides for situations where the instrument constituting the trust does not otherwise provide. Undoubtedly it indicates a general policy; a policy of carefulness in the handling of trust funds; it points out a course free from risk, and affords a certain sure method by which the trustee may secure an affirmation of the legality of his. investment in advance. So that, as a matter of prudence, resort to the methods indicated may be strongly commended. But the statute does mot afford any special aid in determining the question involved in the case at bar unless it be ascertained that the will gives no added authority to the trustee.
The general matter of investments of trust funds by trustees has been a subject of extended com- *299 ment by text writers, and of a great variety of decisions of courts. It may be assumed, based upon the ancient principle of English equity, that a trustee is held to a rigid accountability in the execution of the trust, the rule requiring the trustee to invest on good security and holding him liable for a loss occasioned by an improper investment even though it has been made in the utmost good faith; but if he has acted with due prudence, discretion and diligence, and in accordance with the law and with the established rules of equity, he will not be held liable for loss in case such loss follows. In this country there does not seem to be any settled rule applicable to cases such as we are considering, although in England a stringent rule has obtained in the chancery courts. Putting it briefly it is that a trustee will be protected only where he invests in such securities as the court would decree on application. The grounds of the rule are more specifically stated in Clough v. Bond, 3 My. & Cr., 491, thus: “It will be found to be the result of all the best authorities upon the subject that, although a personal representative, acting strictly within the line of his duty, and exercising reasonable care and diligence, will not be responsible for the failure or depreciation of the fund in which any part of the estate may be invested, or for the insolvency or misconduct of any person who may have possessed it, yet, if that line of duty be not strictly pursued, and any part of the property be invested by such personal representative in funds or upon securities not authorized, or be put within the control of persons who ought not to be entrusted with it, and a loss be thereby eventually sustained, such per *300 sonal representative will be liable to make it good, however unexpected the result, however little likely to arise from the course adopted, and however free such conduct may have been from improper motive. Thus, if he omit to sell property when it ought to be sold, and it be afterwards lost without any fault of his, he is liable; or if he leave money due upon personal security, which though good at the time afterwards fails.”
This rule has been taken as a guide by the courts of several of the states of the Union. They hold that an investment in bank stock is an investment in personal securities which is condemned. Their decisions fully support the contention of the learned counsel for defendant in error, and if they should be followed in the present case the judgments below would be affirmed and the administrator would be held. A number of the authorities of this character will be found collected in their proper place preceding this opinion. But a more liberal doctrine has been sustained by the courts of a number of the states of the Union, notably Massachusetts, (Harvard College v. Armory, 9 Pick., 446; Lovell, v. Minot, 20 Pick., 116; Brown v. French, 125 Mass., 410); Pennsylvania, (Barker’s Estate, 159 Pa. St., 518); Kentucky, (Luxon v. Wilgus, 7 Bush., 205; Durrett’s Gdn. v. Commonwealth, 90 Ky., 312); Mississippi, (Smyth v. Burns, 25 Miss., 423); and Maryland, (McCoy v. Horwitz, Admr., 62 Md., 183).
With the authorities of this country thus in conflict we are at liberty to apply such rule to the present case as seems to us most consonant with justice and equity, having especially in mind the *301 terms of the will itself and the duty to give effect to the intent of the testator to be gathered from those terms. By the clause quoted the trust reposed is most liberal. It gives to the trustee and to her successors in trust the title to all the testator’s property, with authority “to sell at private sale or otherwise all or any part of my personal estate in such manner and upon such terms as may be deemed best, and deliver for any or all real estate sold deeds,” “and re-invest the proceeds arising from any such sales in such manner as she or they may think best,” and further “to dispose of any property, real or personal, so acquired and re-invest the proceeds- in the same manner.” We cannot conceive that this language imports a purpose to limit the power of the trustee to the ordinary powers incident to such trusts, or to confine his conduct as to investments within the narrow conw pass of the statute. On the contrary it lodges with the trustee the most ample authority not only to sell the property in such manner as his judgment should dictate, but to invest and re-invest the pro-/ ceeds in any manner to such trustee deemed best.1 Can it be possible that the testator intended or expected that the trustee would be governed by any statute inconsistent with the expressed purpose of the will? We think not. Had that been -the intent no provision such as is found would have been necessary. By other clauses of the will it was made his duty to pay the proceeds by way of earnings of the- funds to named beneficiaries, and the whole will imports a duty to keep the funds invested in such manner as that income would be derived therefrom. We do not agree with the *302 /proposition that in order to authorize a trustee to 'invest trust funds otherwise than in accordance with the statute the instrument creating the trust must specify the particular securities to be purchased; it is sufficient if the instrument designates the test to be applied. In the present case the .will does so designate by providing that investments may be made in such manner as the trustee may think best. Undoubtedly it was expected that the trustee would exercise care, good faith and good judgment in making investments, such judgment to be exercised in view of conditions existing at the time, and as certainly the duty to satisfy that expectation devolved upon the administrator. In what respect, pray, did he fail to observe that duty? We fail to see any such failure. Let us recall some of the fácts. He in the first place investigated the condition of the bank for himself, using the usual and perhaps only means of ascertaining its then condition; he consulted business people of good judgment in such matters, persons having the means of knowing what was to be known by the public; he went further, he laid the matter of authority and discretion of the will with respect to investments before his attorney, a lawyer possessing the means of knowing the reputation of the bank and capable of giving a sound legal opinion as to the powers given by the will; lie spoke to the judge of the court under whose direction the estate was being settled, and all commended the investment. His good faith is further abundantly shown by the fact that in his own rig'ht he at the time of these purchases owned stock in the same institution and continued to be such owner *303 from that time on. It is common knowledge that trustees find it difficult to make satisfactory investments of trust funds, as the amount seeking investment is all the time large and the opportunities for profitable and at the same time safe investments is limited. And if a trustee under the circumstances which surrounded this administrator at the time he made these investments, acting as he supposed and was advised under the distinct terms of the will is to be held personally liable for the loss not only would it result as it seems to us in a gross injustice in this instance but it would prove a discouragement to conscientious men, deterring them from accepting trusts of this nature. Where as in this case the party creating the trust has given to-the trustee enlarged and adequate powers and he exercises them in good faith and with prudence and with what is appparent good judgment at the time and a loss results, equity requires that that loss be borne by the-estate and the beneficiaries thereof and not personally by the trustee. Our conclusion is that the provisions of the will extended the scope of the powers as to investments and thus took the case out of the operation of the statute, and that no personal liability attached t® the administrator. /
We know of no reported case by any of the courts of this state _ which exactly determines the case at bar, but the conclusions hereinbefore indicated are consonant with and to a greater or less degree supported by Miller v. Proctor, 20 Ohio St., 442; Watts v. Watts, 38 Ohio St., 480; Scott v. Trustees, 39 Ohio St., 153; Hamilton, Trustee, v. Jacobs, 4 O. C. C., 250.
*304 Attention is called by counsel to what it is claimed appears by the record that in making one of these investments the administrator must -have used some eighty-one dollars of his own money and over two hundred dollars, of the life estate fund, while he was authorized to invest only the permanent fund. This was an :^'regularity, but it ought not to be visited with a severe penalty, especially as no reason is shown why it may not be ordered adjusted and the accounts properly settled without detriment to the beneficiaries in the probate court. It also appears that a portion of the stock purchased was first issued in the individual name of the administrator. This was through inadvertence and ■a temporary misunderstanding of the force of the provision of the will conveying title to all the estate to the trustee. As soon as the mistake was discovered it was corrected and the certificates of stock to the administrator as such duly issued. We do not regard the objection as serious.
The conclusion stated requires a reversal of the judgments of the circuit and common pleas courts and a final judgment by this court overruling the exception and for costs in favor of the ‘ plaintiff in error.

Judgment reversed.

Crew, C. J. Summers, Davis, Shauck, and Price, JJ., concur.